**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lyhesia Peltier Tisdale,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-23-00979-PHX-DGC<br><br>**ORDER** |

Plaintiff Lyhesia Tisdale seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her claim for disability insurance benefits. For reasons stated below, the Court will reverse the decision and remand the case for an award of benefits.

**I.   Background.**

Plaintiff is 51 years old, has a high school education, and previously worked as a hair stylist. Tr. 72, 91, 97. She applied for disability insurance benefits in June 2014. Tr. 97. The claim was denied by state agency physicians at the initial and reconsideration levels. Tr. 97-119.

Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ") in June 2016. Tr. 34-58. The ALJ denied the claim in a decision issued August 22, 2016. Tr. 120-36. Two years later, the Appeals Council remanded the case for a new hearing because the ALJ had erred in determining that Plaintiff could perform past work. Tr. 137-41.

On remand, a different ALJ issued an unfavorable decision and the Appeals Council denied review in September 2020. Tr. 1-6, 11-33. In March 2022, Judge Susan Brnovich reversed the decision and remanded the case for further proceedings. Tr. 1685-96; *see* Doc. 24, *Tisdale v. Comm'r of Soc. Sec.*, No. CV-20-02022-PHX-SMB (D. Ariz. Mar. 28, 2022).

On remand from Judge Brnovich's order, Plaintiff, medical expert James Washburn, and vocational expert Susan Creighton-Clavel testified at a hearing before the ALJ on March 8, 2023. Tr. 1636-64. The ALJ issued another unfavorable decision on May 26, 2023. Tr. 1610-35. This decision became the Commissioner's final decision when the Appeals Council denied review. *See* Tr. 1611; 20 C.F.R. §§ 404.981, 404.984; *Carla F. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05951-BAT, 2020 WL 3958947, at *2 (W.D. Wash. July 13, 2020).

Plaintiff brought this action for judicial review in June 2023. Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 13-18.

**II.   Standard of Review.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may reverse the decision if it is based on legal error or is not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.*

The ALJ is responsible for determining credibility and resolving conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Under the Social Security Act, a claimant is disabled if she cannot engage in substantial gainful activity because of a medically determinable physical or mental

impairment that has lasted, or can be expected to last, for a period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Whether the claimant is disabled is determined by a five-step process. The claimant must show that (1) she has not engaged in substantial gainful activity during the relevant period, (2) she has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") – the most she can do with her impairments – precludes her from performing past work. If the claimant meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[1]

Plaintiff has met her burden at steps one and two – she has not engaged in substantial gainful activity between the alleged disability date of June 20, 2014 and her date last insured of December 31, 2017, and she has multiple severe impairments: cervical and lumbar degenerative disc disease, left shoulder tendonitis, right shoulder rotator cuff tear, left knee meniscus tear, atrial fibrillation, and obesity. Tr. 1616.

The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 1617-18. Plaintiff does not challenge this finding.

The ALJ determined at step four that Plaintiff had the following RFC through the date last insured:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can lift and carry 10 pounds occasionally and less than 10 frequently, stand and walk for 2 hours in an 8 hour day, sit for 6 hours in an 8 hour day, occasionally reach[] overhead, occasionally push and pull with the left lower extremity, she can occasionally balance and stoop but never kneel, crouch, crawl or climb, [and] she would use a cane for pain and balance.

---

[1] An impairment or combination of impairments is "severe" if it significantly limits the ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The basic work activities relevant in this case include the physical functions of sitting, standing, walking, and reaching. *See* 20 C.F.R. § 404.1522(c).

3

Tr. 1618. The ALJ found that this RFC precluded Plaintiff from performing her past work as a hair stylist because she is limited to sedentary work with restrictions. Tr. 1624.[2]

Based on Plaintiff's RFC and testimony from the vocational expert, the ALJ found at step five that Plaintiff could perform the jobs of telephone quotation clerk, charge account clerk, and election clerk. Tr. 1624-25. The ALJ therefore determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 1625.

### III. Discussion.

Plaintiff argues that the ALJ erred by (1) failing to rule on her objection to the vocational expert's testimony about the number of available jobs in the national economy, (2) failing at step five to identify jobs within Plaintiff's RFC, and (3) rejecting opinions of Dr. Washburn, Dr. Anne Koss-Leland, and Dr. Yosef Schwartz. Doc. 15 at 1, 9-14. Defendant concedes that the ALJ erred at step five, and does not address Plaintiff's other arguments. Doc. 17 at 2. The parties disagree on whether remand should be for an award of benefits or further administrative proceedings. Docs. 15 at 14-17, 17 at 2-3.

    **A.**    **Plaintiff's Objection to the Vocational Expert's Testimony.**

At the most recent hearing in March 2023, the vocational expert testified that an individual with Plaintiff's RFC, age, education, and work experience could perform the following jobs that exist in significant numbers in the national economy:

- Telephone Quotation Clerk, DOT #237.367-046, sedentary, 85,000 jobs;

- Charge Account Clerk, DOT #205.367-014, sedentary, 32,000 jobs;

- Election Clerk, DOT #205.367-030, sedentary, 96,000 jobs.

Tr. 1624-25, 1659.[3]

---

[2] To determine the physical exertion requirements of work in the national economy, the Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy. Sedentary work involves lifting no more than 10 pounds, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally standing and walking. 20 C.F.R. §§ 404.1567(a).

[3] In making determinations about available work in the national economy, the SSA primarily relies on the Dictionary of Occupational Titles (DOT) and testimony from vocational experts who may use a wide range of data sources and methodologies to

In April 2023, Plaintiff submitted a written objection to the vocational expert's job numbers. Tr. 1851-60 (Ex. 31E). The objection included job data generated by the SkillTRAN Job Browser Pro software, "a data source and methodology frequently relied on by the SSA." *White*, 44 F.4th at 837 (citations omitted); *see Catherine L. v. Kijakazi*, No. 2:22-CV-00691-SB, 2023 WL 3318148, at *6 (D. Or. May 9, 2023) (noting that vocational experts "often use SkillTRAN because it is a reliable source of job-number estimates"). Plaintiff's job data suggested that there were less than 10,000 jobs in the national economy that she purportedly could perform. Tr. 1852-58. Plaintiff argued that given these numbers, the vocational expert was not able to identify a significant number of jobs available at step five, noting that the Ninth Circuit has found that 25,000 jobs present a "close call" in meeting this burden. Tr. 1851; *see Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014).

The ALJ made Plaintiff's objection part of the administrative record (*see* Tr. 1614, 1631), but did not rule on it or otherwise address the discrepancy between the job-number estimates provided by Plaintiff and the vocational expert. This was clear error. *See Buck*, 869 F.3d at 1052 ("[T]he vast discrepancy between the VE's job numbers and those tendered by Buck . . . is simply too striking to be ignored. This inconsistency in the record must be addressed by the ALJ[.]"); *White*, 44 F.4th at 837 (applying *Buck* and holding that the ALJ erred in failing "to resolve the inconsistency between the job-number estimates provided by White and by the VE"); *Catherine L.*, 2023 WL 3318148, at *6 ("Plaintiff submitted her estimated job numbers to the ALJ and Appeals Council, and the discrepancy between Plaintiff's and the VE's estimates (87 total jobs versus 76,000 total jobs) is comparable to the discrepancy in *White* (4,290 total jobs versus 169,000 total jobs). The Commissioner nevertheless argues that she met her burden at step five. The Court

---

generate job-number estimates. *See Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017); *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022). Some courts have criticized the SSA for continuing to rely on the DOT for estimates of available jobs because the DOT "was last revised thirty years ago, leaving many of its job descriptions outdated." *White*, 44 F.4th at 835 (citation omitted). This Circuit has joined its "sister circuits in encouraging the SSA to make the transition to a system that more accurately reflects available jobs in the current economy." *Id.*

5

disagrees."); *Perkins v. Kijakazi*, No. 21-35730, 2022 WL 3585587, at *2 (9th Cir. Aug. 22, 2022) ("Perkins' new job-number evidence came from the same source as White's evidence – Job Browser Pro – so was equally 'significant' and 'probative.'  Additionally, the discrepancy between Perkins' new job-numbers estimates (4,827 jobs in total) and the only estimates provided by a VE in this case (579,000 jobs in total) was even larger than the substantial discrepancy in *White*.  Because the Appeals Council chose to make this new evidence part of the administrative record, the agency was bound to address and resolve the conflict between Perkins' job-numbers estimates and the 2011 VE's estimates.") (cleaned up); *Stephanie A. v. Kijakazi*, No. 3:22-CV-00349-BGS, 2023 WL 6305793, at *5 (S.D. Cal. Sept. 27, 2023) ("Assuming [the Job Browser Pro] job number estimates are accurate, the total number of national jobs is 12,986.  The Ninth Circuit has noted that whether 25,000 national jobs is sufficient to be considered significant numbers in the national economy 'presents a close call.'  Based on a total of 12,986 jobs, there is a reasonable probability that the outcome of Plaintiff's proceeding may have been different had the ALJ resolved the conflict between the VEs' job numbers and Plaintiff's.") (citation omitted).

> **B.     The ALJ's Other Error at Step Five.**

The ALJ found that Plaintiff was limited to six hours of sitting, leaving two hours of standing or walking during an eight-hour workday.  Tr. 1618.  Dr. Washburn testified that Plaintiff should be allowed to change positions from seated to standing for at least five minutes each hour.  Tr. 1651-52.  The vocational expert testified that an individual who needed to stand for five minutes an hour (only 40 minutes total) would not be able to perform the jobs of telephone quotation clerk, charge account clerk, and election clerk:

> [T]hose jobs typically can't be performed standing, so it would require . . . a special accommodation by the employer to allow them to stand up for five minutes.  If they could stand up and do the job and sit down and do the job, I would say yes, but these jobs are primarily sitting down.  They don't get up very much, so there would be no jobs.

Tr. 1660. Defendant concedes that the ALJ erred at step five because Plaintiff's RFC conflicts with the requirements of the jobs about which the vocational expert testified. Doc. 17 at 2.

### C. Medical Opinion Evidence.

The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments[.]" 20 C.F.R. § 404.1527(a)(1). The ALJ must consider every relevant medical opinion in the record. 20 C.F.R. § 404.1527(b)-(c); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The ALJ may reject a medical opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

#### 1. Dr. Washburn.

Dr. Washburn opined that Plaintiff had the RFC to lift five pounds frequently and ten pounds occasionally, sit for six hours and stand for two hours during an eight-hour workday, and reach overhead occasionally. Tr. 1649. The ALJ found this RFC opinion to be consistent with the objective record and gave it great weight, but rejected Dr. Washburn's opinion that Plaintiff could miss two days of work each month for doctor appointments. Tr. 1621-22, 1652. Plaintiff argues that the ALJ erred in this regard. Doc. 15 at 11-12. The Court agrees.[4]

The ALJ asserted in conclusory fashion that "there is no objective support in the record" for Dr. Washburn's opinion that Plaintiff could miss two days of work each month for doctor appointments. Tr. 1621-22. But Dr. Washburn was the medical expert designated to make determinations based on his review of the medical records (Tr. 1639), and he based his opinion on Plaintiff's "many visits" to the doctor's office for her "multiple issues" (Tr. 1652). The ALJ did not ask Dr. Washburn to clarify or further support his

---

[4] By failing to respond to Plaintiff's arguments (*see* Doc. 17 at 2-3), Defendant has waived any argument that the ALJ did not error in rejecting medical opinions. *See Jeffrey C. v. Kijakazi*, No. 3:22-CV-79-SI, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) (citing cases).

7

opinion during the hearing, and no medical expert opined that Plaintiff would miss fewer than two days for medical appointments.

The ALJ's assertion that Dr. Washburn's opinion has no objective support in the record was erroneous. *See Jasmine K. v. Saul*, No. C20-0728-MAT, 2021 WL 963476, at *4 (W.D. Wash. Mar. 15, 2021) ("Because the ALJ's rejection of Dr. Gavello's absenteeism opinion appears to be based on sheer disbelief rather than a legitimate rationale for discounting, the Court finds this line of reasoning to be erroneous."); *Janet F. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00419-MKD, 2019 WL 1338404, at *6 (E.D. Wash. Mar. 25, 2019) ("[T]he ALJ discounted Dr. Alpern's opinion that Plaintiff would miss two days of work per month because it was speculative.  As a nonexamining medical expert, who reviewed the full medical record, Dr. Alpern was permitted to opine as to Plaintiff's ability to sustain attendance at work.  The ALJ does not identify how Dr. Alpern's opinion is speculative nor did the ALJ ask Dr. Alpern to clarify or support this opinion during the hearing.  On this record, it was not a legitimate and specific reason to discount Dr. Alpern's opinion[.]") (cleaned up); *Bonifas v. Berryhill*, No. 2:17-CV-00395-DWC, 2017 WL 4402228, at *7 (W.D. Wash. Oct. 4, 2017) ("[T]he ALJ gave limited weight to Dr. Picco's opinion that Plaintiff would miss more than four days of work per month because she found this opinion 'entirely speculative.'  As previously stated, an ALJ must specifically explain why a physician's opinion was flawed.  Here, the ALJ summarily concluded Dr. Picco's opinion was speculative without explaining how his opinion was speculative.  As such, this was not a specific and legitimate reason to reject Dr. Picco's opinion.") (citations omitted); *Lawson v. Colvin*, No. C13-5049-JCC, 2013 WL 6095518, at *6 (W.D. Wash. Nov. 20, 2013) ("The ALJ gave no specific reasons for concluding that, contrary to Dr. Harrison's opinion, Plaintiff would miss no work; instead the ALJ merely gestured broadly at 'the medical record, which does not support a finding that the claimant would have unscheduled absences.'  With no conflict in the testimony, as no opinion stated that the Plaintiff would miss no work, the record was insufficiently developed to dismiss Dr. Harrison's opinion[.]") (cleaned up).

The ALJ further asserted that "doctor appointments generally do not last all day and many employers grant leave for medical reasons[.]" Tr. 1622. The ALJ cited no evidence for this assertion, and "[i]t is not enough for the ALJ's findings to be 'reasonable' – they must also have the support of substantial evidence." *Hari K. S. v. Kijakazi*, No. ED CV 20-2297-PLA, 2022 WL 17079055, at *5 (C.D. Cal. Mar. 7, 2022) (finding that the ALJ erred in speculating that the plaintiff would be absent from work only one day per month).

The ALJ made no specific finding that employers of telephone clerks, charge account clerks, and election clerks grant leave for medical appointments. Nor did the ALJ consider Plaintiff's treatment history or the nature of future medical appointments. Clearly, Dr. Washburn is in a better position than that ALJ to opine on the length of time a medical appointment would require given Plaintiff's multiple impairments.

The ALJ also erred in rejecting Dr. Washburn's opinion on the ground that "doctor appointments generally do not last all day and many employers grant leave for medical reasons[.]" Tr. 1622; *see* Doc. 15 at 12; *Shirley v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 1192, 1203 (D. Or. 2018) ("The ALJ also erred in giving no weight to Dr. Power's opinion that Plaintiff would miss work for physical therapy. . . . The ALJ did not know how long each physical therapy session would last, how intensive each session would be, or whether physical therapy would impact Plaintiff's functioning for the remainder of the day and interfere with his ability to work.").

### 2. Dr. Schwartz.

Dr. Schwartz completed a disability determination form in October 2022. Tr. 1704-18 (Ex. 13A). He opined that Plaintiff had the RFC to sit for six hours and stand or walk for two hours in an eight-hour workday, but would need a fifteen minute sit-stand option every hour "as needed for pain, discomfort, swelling, [and] edema." Tr. 1711; *see also* Tr. 1662-63 (hearing testimony regarding this RFC assessment). According to the ALJ, Dr Schwartz's opinion does not address Plaintiff's RFC between June 20, 2014, the alleged disability date, and December 31, 2017, the date last insured. Tr. 1622. The ALJ is incorrect.

Dr. Schwartz evaluated the period from "01/01/2017 - 07/31/2022." Tr. 1711. Plaintiff correctly argues that the ALJ is required to evaluate the record for any twelve-month period of disability. Doc. 15 at 13; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. Contrary to the ALJ's assertion, Dr. Schwartz provided an RFC assessment for a full year of the relevant period – from January 1 to December 31, 2017. Tr. 1711. The ALJ erred in giving no weight to Dr. Swartz's opinion.

### 3. Dr. Koss-Leland.

Dr. Koss-Leland examined Plaintiff on January 7, 2019, more than two years after the date last insured. She opined that Plaintiff had the RFC to lift and carry ten pounds occasionally; sit for five hours, stand for one hour, and walk for two hours during an eight-hour workday; and reach occasionally with her right hand and frequently with her left hand. Tr. 731-44 (Ex. 17F). Plaintiff argues that the ALJ erred in giving no weight to this opinion. Doc. 15 at 13-14. The Court does not agree.

The ALJ provided this explanation for rejecting Dr. Koss-Leland's opinion:

> Instead of an opinion as to the claimant's functioning during the period of time considered in this decision, Dr. Koss-Leland[] opined as to the claimant's functioning for a time period well outside the period in question. There is no evidence that Dr. Koss-Leland considered evidence from the relevant time period. Nor does this opinion contain any statements about the claimant's [RFC] from June 20, 2014, to December 31, 2017[.]

Tr. 1622-23. The ALJ correctly found that Dr. Koss-Leland's opinion does not relate to the relevant time period. Dr. Koss-Leland reviewed no medical records and offered no opinion about Plaintiff's RFC before the date of the examination. Tr. 737-38.

Plaintiff contends that the ALJ failed to comply with Judge Brnovich's remand order and "recycled the same illegal reasons for rejecting the opinion of Dr. Koss-Leland." Doc. 15 at 13. But Judge Brnovich did not address the present issue and instead concluded that the ALJ had erred in finding that Plaintiff was more cooperative during treatment examinations than in the consultive examination performed by Dr. Koss-Leland. Tr. 1690.

Plaintiff notes that the examination was ordered by the state agency, which "clearly believed it would be relevant to the period at issue[.]" Doc. 15 at 14. But the RFC form permitted Dr. Koss-Leland to identify the date on which Plaintiff's functional limitations were first present. Tr. 737. She identified no such date, her opinion therefore related to Plaintiff's "current limitations only." *Id.*

### D.      Scope of Remand.

The ALJ's decision must be reversed because it is based on legal error and is not fully supported by substantial evidence. Plaintiff argues that the Court should remand the case for an award of benefits. Docs. 15 at 14-17, 18 at 1-3. Defendant contends that a remand for further proceedings is warranted. Doc. 17 at 2-3.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a rare exception to this rule, the Court may remand for an award of benefits if (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Id.*

The first step of the three-part inquiry is satisfied. This case has a fully developed record that consists of more than 2,500 pages of earnings records, disability reports, medical records, medical source opinions, testimony from Plaintiff and vocational experts, multiple administrative hearings and decisions, and Judge Brnovich's remand order. *See* Doc. 13 (Tr. 1-1231); Doc. 14 (Tr. 1232-2531). Another remand for further administrative proceedings would serve no useful purpose given that the date last insured passed more than four years ago. Indeed, the ALJ gave no weight to Dr. Koss-Leland's opinion because it addressed Plaintiff's functioning for a time period after the period in question. Tr. 1623.

Defendant asserts that Plaintiff ignores the opinions of the state agency physicians, Drs. Ostrowski and Keer, that Plaintiff can perform medium work. Doc. 17 at 2; *see* Tr.

98-119 (Exs. 2A, 4A). But the ALJ rejected those opinions because they "are not consistent with the objective record" and evidence "suggests that greater limitations than those stated by Drs. Ostrowski and Keer are warranted." Tr. 1622. Defendant has not shown that this conclusion was wrong or that the discounted medical opinions would be credited on remand. *See* Docs. 17 at 2, 18 at 2-4.

Defendant notes that the ALJ found Plaintiff's symptom testimony to be not entirely credible. Doc. 17 at 2. But this is not an outstanding issue that must be resolved on remand. The ALJ's RFC determination was based in part on the credibility finding, and Defendant does not contend that the RFC determination would change if the case was remanded for further proceedings.

The second step is also satisfied because the ALJ erred in rejecting opinions of Drs. Washburn and Schwartz.

The third step is satisfied because the ALJ would be required to find Plaintiff disabled if the improperly discredited evidence is credited as true. Dr. Washburn opined that Plaintiff would need to stand for five minutes an hour and could miss two days of work each month for doctor appointments. Tr. 1652. The vocational expert testified that this would preclude the jobs of telephone quotation clerk, charge account clerk, and election clerk – the only jobs the ALJ found Plaintiff could perform. Tr. 1625, 1660-61; *see Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014) ("[The] VE explicitly testified that a person with the impairments described by Garrison or her medical caretakers could not work. Accordingly, Garrison satisfies the requirements of the credit-as-true standard."); *Harris v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08147-PCT-DLR (JZB), 2023 WL 5596621, at *11 (D. Ariz. Aug. 3, 2023) ("[T]he vocational expert testified that an individual that is absent more than one day a month is not capable of working in competitive employment. Ultimately, the vocational expert testimony establishes that if Plaintiff's testimony were credited-as-true, the ALJ would be required to find Plaintiff disabled.").

Although the record in this case does not confirm beyond all possible doubt that Plaintiff's multiple impairments prevent her from working, the medical records do not raise serious doubt that she is unable to work. *See Garrison*, 759 F.3d at 1021. The Court therefore concludes that a remand for an award of benefits is appropriate. "This result squares with the purpose of the credit-as-true rule, which aims to ensure a thorough examination of claimants' cases in the first instance and prevent an inefficient and unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Youssef v. Comm'r of Soc. Sec. Admin.*, No. CV-19-00396-PHX-JZB, 2020 WL 1170845, at *5 (D. Ariz. Mar. 11, 2020) (quoting *Benecke v. Barnhart*, 379 F.3d 587 595 (9th Cir. 2004)); *see Garrison*, 759 F.3d at 1021 ("[O]ur precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose[.]'"); *Christopher S. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-00473-CL, 2021 WL 638032, at *12 (D. Or. Feb. 18, 2021) ("The Commissioner . . . asserts that the 'normal' rule is for a court to remand for further proceedings rather than for payment of benefits. But the numerous hearings, extensive medical opinion evidence, and multiple erroneous decisions in this matter demonstrate that this is not a 'normal' case. The Court is not persuaded by the Commissioner's insubstantial arguments that the record is not fully developed."); *Jaime C. v. Saul*, No. 20-CV-03760-JSC, 2022 WL 1601398, at *7 (N.D. Cal. Mar. 9, 2022) ("The Commissioner has had multiple opportunities to cure the errors in the ALJs' decisions and each time compounded the errors. As in *Benecke*, 'remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend Plaintiff's long wait for benefits.'"); *Melendrez v. Saul*, No. 2:19-CV-07781-VEB, 2021 WL 4499272, at *5 (C.D. Cal. Feb. 1, 2021) ("The Commissioner argues that a remand for further proceedings is the appropriate remedy. However, it is not clear what purpose a (third) remand and another (fourth) ALJ decision would serve in this case. The record is extensively developed and the Commissioner has had multiple opportunities to engage in a proper adjudication of all material issues.").

**IT IS ORDERED:**

1. The final decision of the Commissioner of Social Security to deny Plaintiff's claim for disability insurance benefits (Tr. 1610-35) is **reversed** and the case is remanded for an award of benefits

2. The Clerk of Court shall enter judgment accordingly.

Dated this 9th day of November, 2023.

David G. Campbell
Senior United States District Judge